UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

AMERICAN CIVIL LIBERTIES UNION OF
MICHIGAN, a Michigan nonprofit corporation,

    Plaintiff,

vs.

FEDERAL BUREAU OF INVESTIGATION,
and UNITED STATES DEPARTMENT OF
JUSTICE,

    Defendants.

Case No.

Honorable

**COMPLAINT FOR INJUNCTIVE RELIEF**

1. In this Freedom of Information Act, 5 U.S.C. § 552, ("FOIA") case, the American Civil Liberties Union of Michigan ("ACLU of Michigan") challenges the government's failure to promptly release documents pertaining to the use of race and ethnicity to conduct assessments and investigations by the Federal Bureau of Investigation ("FBI") in Michigan. Although the FBI's use of race and ethnicity to collect information about and "map" racial and ethnic demographics, "behaviors," and "life style characteristics" in local communities is the subject of widespread public attention, concern, and debate, the details have been shrouded in secrecy.

2. On July 27, 2010, the ACLU of Michigan filed a FOIA Request ("Request") seeking the release of records from the FBI's Detroit Field Office concerning the FBI's implementation of its authority under the Domestic Intelligence and Operations Guide ("DIOG") to use race and ethnicity to map local communities.

3. The FBI has failed to fulfill its obligation to make promptly available the requested information. Although the FBI issued a first interim release in December 2010, it improperly redacted information from those documents. The FBI has also failed to provide any

information subsequent to the first interim release although more than eleven months have passed since the Request was filed.

4. The ACLU of Michigan is entitled to the records it seeks. These records will significantly contribute to public understanding of the FBI's potential "mapping" of local communities and businesses based on race and ethnicity, and the targeting of ethnic communities for special information collection, which raise grave civil rights and civil liberties concerns. The ACLU of Michigan is also entitled to a waiver of processing fees because the release of the requested records is in the public interest, and to a limitation of process fees because it is a "news media" requester.

5. The ACLU of Michigan seeks an injunction requiring Defendants to process its Request immediately, to release records that have been unlawfully withheld, and to release information that has been unlawfully redacted from released documents. The ACLU of Michigan also seeks an order enjoining Defendants from assessing fees for the processing of the Request.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552(a)(4)(A)(vii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-706. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B), which provides jurisdiction in the district court of the United States in the district where the complainant has its principal place of business.

## PARTIES

7. Plaintiff American Civil Liberties Union of Michigan is a regional affiliate of the American Civil Liberties Union ("ACLU"), which is a national, non-profit, and non-partisan

organization dedicated to protecting the civil liberties of all people and safeguarding basic constitutional rights to privacy, free expression, and due process. The ACLU of Michigan is a 501(c)(4), non-profit organization established under the laws of Michigan and has a principal place of business at 2966 Woodward Avenue, Detroit, Michigan 48201. The ACLU of Michigan endeavors to maintain and advance civil liberties, including the freedoms of association, press, religion, and speech, and the rights of franchise, to due process of law, and to equal protection of the laws, for all people throughout the State of Michigan.

8. Defendant Federal Bureau of Investigation is a component of the U.S. Department of Justice ("DOJ"). It is headquartered in Washington, D.C. and has field offices throughout the country, including in Detroit, Michigan.

9. Defendant DOJ is a Department of the Executive Branch of the United States Government and an agency within the meaning of 5 U.S.C. § 552(f)(1). The DOJ is headquartered in Washington, D.C.

## FACTUAL ALLEGATIONS

**The Domestic Intelligence Operations Guide and the FBI's Use of Race and Ethnicity**

10. The public is increasingly concerned about the expansion of FBI surveillance powers and the ways in which the FBI's conduct of assessments and investigations may violate civil rights and civil liberties, particularly those of racial and ethnic minority communities. In December 2008, the Department of Justice issued revised Attorney General Guidelines, which govern the FBI's conduct in criminal, national security, and counter-intelligence assessments and investigations. On December 16, 2008, FBI Director Robert Mueller approved the "Domestic Intelligence Operations Guide" or "DIOG", which is an internal FBI manual that implements the

Attorney General Guidelines. The DIOG applies to all investigative activities and intelligence collection activities conducted by the FBI within the United States.

11. The DIOG was not made publicly available until September 2009, when the FBI released it in heavily-censored form. In January 2010, however, the FBI released through FOIA a less-censored version of the DIOG.

12. The DIOG purports to permit the FBI to "identify locations of concentrated ethnic communities in the Field Office's domain"; to collect and analyze racial and ethnic community demographics, including data about "ethnic-oriented businesses and other facilities"; to collect and analyze racial and ethnic "behavior[s]," "cultural tradition[s]," and "life style characteristics" in local communities; and to map racial and ethnic demographics, "behavior[s]," "cultural tradition[s]," and "life style characteristics" in local communities. *See* Fed. Bureau of Investigation, Domestic Intelligence Operations Guide § 4.3(C)(2), *available at* http://vault.fbi.gov/FBI%20Domestic%20Investigations%20and%20Operations%20Guide%20%28DIOG%29. The DIOG details the FBI's power to collect, use, and map racial and ethnic data in order to assist the agency's "domain awareness" and "intelligence analysis."

13. The FBI's potential "mapping" of local communities and local businesses based on race and ethnicity, and its ability to target "ethnic communities" for special collection and mapping of information based on so-called racial and ethnic "behaviors" or "characteristics" raise grave civil rights and civil liberties concerns because they could constitute, or lead to, illegal and unconstitutional racial profiling.

14. When the Los Angeles Police Department revealed a similar plan to map Muslim communities by race and religion, the public outcry was so great that the plan was abandoned immediately. *See* Richard Winton and Teresa Watanabe, *LAPD's Muslim Mapping Plan Killed*,

4

L.A. Times, Nov. 15, 2007, *available at* http://articles.latimes.com/print/2007/nov/15/local/me-muslim15.

15. According to census data, the FBI might consider more than one in four Michigan residents to be considered "ethnic," and their "behaviors," "cultural traditions," and "life style characteristics" potentially could be mapped or otherwise analyzed by the FBI. *See 2010 Census Redistricting Data (Public Law 94-171) Summary File: Race*, U.S. Census Bureau (2010), http://factfinder2.census.gov/faces/tableservices/jsf/pages/productview.xhtml?pid=DEC_10_PL_P1&prodType=table.

16. Although the DIOG has been in effect since December 2008, the public has little information regarding how the FBI has implemented its authority to collect, use, and map racial and ethnic data in Michigan. The public needs such information, however, to provide accurate comments to the FBI regarding the released DIOG, its implementation with respect to various racial and ethnic communities, and concerns regarding the adverse impact of such activities on civil rights and civil liberties.

17. The FBI's General Counsel, Valerie Caproni, has made clear that feedback from the public about the DIOG's policies and their implementation could cause the FBI to reassess the DIOG. Ms. Caproni wrote in a December 15, 2008 letter to Senate Select Committee on Intelligence Chairman John D. Rockefeller IV that "we understand that the expansion of techniques available . . . has raised privacy and civil liberties concerns [but] we believe that our policies and procedures will mitigate those concerns." S. Rep. No. 111-6, at 34 (2009). Ms. Caproni stated that the FBI would reassess the policy judgments made in the DIOG, and that the reassessment would be "informed by our experience in the coming year, as well as by comments and suggestions received from Congress and interested parties." *Id.* The FBI's General Counsel

reaffirmed this intention in an interview posted on the FBI website by stating, "[t]o the extent that the public has comments and concerns, they should let us know because nothing is written in stone and we hope we've gotten it right but if we haven't gotten it right, our goal is to make it right." *Inside the FBI*: *The New Attorney General Guidelines* (Jan. 16, 2009), http://www.fbi.gov/news/podcasts/inside/the-new-attorney-general-guidelines.mp3/view; *see also Investigative Guidelines Cement FBI Role as Domestic Intelligence Agency, Raising New Privacy Challenges*, Ctr. for Democracy & Tech. (Oct. 29, 2008), http://www.cdt.org/policy/investigative-guidelines-cement-fbi-role-domestic-intelligence-agency-raising-new-privacy-cha; Press Release, Am. Civil Liberties Union, ACLU Condemns New FBI Guidelines (Oct. 3, 2008), *available at* http://www.aclu.org/national-security/aclu-condemns-new-fbi-guidelines; *Fact Sheet―New Attorney General Guidelines*, Am. Civil Liberties Union (Oct. 8, 2008), http://www.aclu.org/print/national-security/fact-sheet-new-attorney-general-guidelines.

18. Public concern about, and media interest in, the FBI's racial and ethnic mapping program has intensified in recent months in Michigan and other parts of the country, but publicly available facts remain sparse. *See FBI Defends Guidelines Before Senate Testimony*, CBS News, July 27, 2010, *available at* http://www.cbsnews.com/stories/2010/07/27/national/main6719531.shtml ("While some racial and ethnic data collection by some agencies might be helpful in lessening discrimination, the FBI's attempt to collect and map demographic data using race-based criteria invites unconstitutional racial profiling by law enforcement . . . "); Steve Carmody, *ACLU Wants Info on FBI Racial 'Mapping' Program*, Mich. Radio, July 28, 2010, *available at* http://www.publicbroadcasting.net/michigan/news.newsmain/article/0/1/1681187/Michigan.New

6

s/ACLU.Wants.Info.On.FBI.Racial.%27Mapping%27.Program.; *see also* Carol Cratty, *ACLU Seeking FBI Records on Race and Ethnicity Data*, CNN, July 27, 2010, *available at* http://articles.cnn.com/2010-07-27/us/aclu.fbi_1_ethnic-groups-fbi-offices-ethnic-populations?_s=PM:US; Brent Jones, *ACLU Seeks Information About FBI Racial, Ethnic Data Collection*, Baltimore Sun, July 28, 2010, *available at* http://articles.baltimoresun.com/2010-07-28/news/bs-md-aclu-fbi-20100728_1_ethnic-data-profiling-aclu-representatives; Richard Locker, *Tennessee ACLU Asks FBI About Race Data in Localities*, The Commercial Appeal, July 30, 2010, *available at* http://www.commercialappeal.com/news/2010/jul/30/tennessee-aclu-asks-fbi-about-race-data-in/; Tim McGlone, *ACLU Requests Racial Data From FBI in Norfolk, Richmond*, Virginian-Pilot, July 28, 2010, *available at* http://hamptonroads.com/2010/07/aclu-requests-racial-data-fbi-norfolk-richmond; Jonathan Saltzman, *ACLU Affiliates Want FBI to Disclose Data*, Boston Globe, July 27, 2010, *available at* http://articles.boston.com/2010-07-27/news/29327598_1_ethnic-groups-affiliates-fbi; Joe Tyrrell, *Legal Group*, ACLU Accuse FBI *of Targeting Muslims*, N.J. Newsroom, July 28, 2010, *available at* http://www.newjerseynewsroom.com/nation/legal-group-aclu-accuse-fbi-of-targeting-muslims; Gene Warner, *Data Mining on Minorities by FBI Raises Profiling Issue*, Buffalo News, July 28, 2010, *available at* http://www.buffalonews.com/city/article82973.ece; Patrick Williams, *ACLU Wants to Know How the FBI Profiles Ethnic Communities*, Dallas Observer, Aug. 5, 2010, *available at* http://www.dallasobserver.com/2010-08-05/news/aclu-wants-to-know-how-the-fbi-profiles-ethnic-communities/; Karen Lee Ziner, *R.I. ACLU Seeks FBI Records Regarding Ethnic Profiles of Neighborhoods*, Providence J., July 29, 2010, *available at* http://www.projo.com/news/content/ACLU_FBI_07-29-10_FFJBB2M_v15.3cf5baf.html.

19. In short, there is significant and increasing public concern that the FBI is collecting, using, and mapping racial and ethnic data about local communities as revealed in the DIOG in ways that violate civil rights and civil liberties. The ACLU of Michigan's FOIA request is intended to obtain information about how the FBI is conducting such activities, and the guidelines governing such actions.

## The FOIA Request

20. On July 27, 2010, the ACLU of Michigan submitted the Request pursuant to the FOIA, 5 U.S.C. § 552, and the DOJ implementing regulations, 28 C.F.R. § 16.1, to Defendant FBI, seeking records pertaining to the FBI's use of race and ethnicity to conduct assessments and investigations in local communities in Michigan.

21. FOIA compels each agency to make available information to the public upon request, and carries a strong presumption in favor of disclosure of government records.

22. The FBI is subject to a comprehensive regime of oversight to ensure respect for civil liberties. This oversight regime includes the FOIA, which "provides the public with access to FBI documents not covered by a specific statutory exemption." DIOG § 4.1(C)(3).

23. The Request seeks legal memoranda, procedures, policies, directives, practices, guidance, and guidelines concerning the following types of information that the FBI may collect, map or otherwise use in the course of assessments and investigations pursuant to the authorities described in the DIOG: (a) racial and ethnic information; (b) "ethnic-oriented" businesses or other "ethnic-oriented" facilities; (c) "[f]ocused behavioral characteristics reasonably believed to be associated with a particular criminal or terrorist element of an ethnic community"; and (d) "behavioral and cultural information about ethnic or racial communities that is reasonably likely to be exploited by criminal or terrorist groups who hide within those communities." It also seeks

8

records concerning the information that the FBI Field Office in Michigan has collected or mapped pursuant to the authorities described in the DIOG. The Request additionally seeks information about which, if any, communities in Michigan the FBI Field Office has collected or mapped racial or ethnic information, and the maps it has created based on any data collected. Finally, the Request seeks documents pertaining to how the FBI is authorized to use the racial and ethnic data it collects pursuant to the authorities described in the DIOG.

## Request for a Public Interest Fee Waiver

24. The ACLU of Michigan sought a waiver of any document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest.

25. The ACLU of Michigan is entitled to a waiver of processing fees because the disclosure of the information sought by the request is in the public interest because "it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requestor." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 28 C.F.R. § 16.11 (k)(1).

26. Disclosure of the requested records will contribute significantly to the public's understanding of the FBI's collection and mapping of racial and ethnic data in local communities.

27. Disclosure is not in the ACLU of Michigan's commercial interest. The ACLU of Michigan summarizes, analyzes, explains and disseminates the information it gathers through the FOIA at no cost to the public.

Request for a Limitation of Fees Based on News Media Requester Status

28. The ACLU of Michigan sought a limitation of fees on the ground that the ACLU of Michigan qualifies as a "news media" requester. *See* 5 U.S.C. § 552(a)(4)(A)(ii); *see also* 28 C.F.R. § 16.11(d).

29. The ACLU of Michigan is entitled to a waiver of any document reproduction fees because the records sought by the FOIA Request are not sought for commercial use and the request is made by a representative of the news media. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

30. The ACLU of Michigan is a representative of the news media for purposes of FOIA because it is an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience. The ACLU of Michigan publishes newsletters, news briefs, right-to-know documents, and other educational and informational materials that are routinely and widely disseminated to the public through a variety of channels.

**Agency Response**

31. By letter dated July 30, 2010, the FBI acknowledged receipt of the Request.

32. By letter dated August 6, 2010, the FBI stated that it was searching its Central Records System for the information requested by the ACLU of Michigan and assigned tracking number 1151941-000 to the Request.

33. By letter dated November 4, 2010, the FBI indicated that it was still searching for documents and that once the search process was completed, the documents would be forwarded to the "perfected backlog" to await assignment to an analyst. As of November 3, 2010, the FBI already had exceeded the generally applicable twenty-day statutory deadline for processing standard, non-expedited FOIA requests. *See* 5 U.S.C. § 552(a)(6)(A)(i).

34. Finally, more than four months later, by letter dated December 22, 2010, David Hardy, Section Chief of the Record/Information Dissemination Section of the Records Management Division of the FBI, issued Plaintiff a "first interim release" consisting of 298 pages. Mr. Hardy stated that certain information was withheld from the documents pursuant to FOIA exemptions set forth in 5 U.S.C. § 552(b)(2), (6), (7)(C) and (7)(E). Mr. Hardy also stated that Plaintiff's request for a fee waiver "remains under consideration," and will be decided "once all responsive material has been received and reviewed."

35. The 298-page first interim release includes duplicate pages, redacted in part, consisting of slideshows describing the DIOG for FBI agents and other internal audiences. None of the documents are specific to Michigan or the Detroit Field Office.

36. As of the date of this filing, the FBI has not produced any additional documents or informed Plaintiff of an anticipated date for the completion of the processing of the Request.

37. Upon information and belief, Defendants are improperly withholding the records sought by Plaintiff's Request and have documents not included in the first interim release that are responsive to the Request, including documents generated by the Detroit Field Office and/or documents that detail how the FBI has implemented its authority under the DIOG to use race and ethnicity to conduct assessments and investigations in Michigan. The FBI's description of the 298 pages as a "first interim release" concedes as much.

**Exhaustion**

38. Plaintiff has exhausted all applicable administrative remedies with respect to the Request.

39. By letter dated February 16, 2011, Plaintiff timely appealed the FBI's withholding of information from the documents in the first interim release; its failure to timely respond to the

FOIA Request, to make the requested information promptly available, and to refrain from improperly withholding documents; and its failure to decide and/or grant Plaintiff's requests for a fee waiver and for a limitation of processing fees.

40. By letter dated February 22, 2010, the DOJ Office of Information Policy acknowledged receipt of the ACLU of Michigan's appeal.

41. The ACLU of Michigan spoke with a DOJ official by phone on May 11, 2011 regarding the status of its appeal. The DOJ official indicated that the DOJ's best "estimate" was that it might issue a decision on the appeal within approximately four weeks.

42. By letter dated May 23, 2011, Mr. Hardy stated that "[a]dditional material is currently being reviewed by an analyst."

43. The DOJ's response to Plaintiff's appeal is inadequate under the FOIA, which requires that appeals be decided in twenty days absent unusual circumstances. 5 U.S.C. § 552(a)(6)(A)(ii).

44. This action is ripe for review. Any person making a FOIA request has exhausted his administrative remedies if the agency fails to comply with the time limits for consideration of FOIA requests and appeals stated therein. 5 U.S.C. § 552(a)(6)(C)(i). The DOJ should have responded to the appeal no later than March 20, 2011, twenty business days from receipt on February 16, 2011.

45. Defendants' letters dated July 30, 2010, August 6, 2010, December 22, 2010, February 22, 2011 and May 23, 2011, do not identify any "unusual circumstances" arising from the Request.

### Timeliness

46. This action is timely. Lawsuits under the FOIA are governed by a six year statute of limitations.

### CAUSES OF ACTION

47. Plaintiff incorporates all preceding allegations by reference.

48. Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents under 5 U.S.C. § 552(a)(4)(B) because the FBI continues to improperly withhold and/or delay the processing of agency records in violation of the FOIA. Plaintiff will also suffer irreparable injury from, and have no adequate legal remedy for, the FBI's illegal withholding of and prolonged delay in production of government documents pertaining to the racial and ethnic mapping of individuals and communities in Michigan.

49. Defendants' failure to release records responsive to the Request violates the FOIA, 5 U.S.C. § 552(a), and the corresponding agency regulations, 28 C.F.R. § 16.1. The FBI's description of the 298-page release as a "first interim release" implies that there are additional documents responsive to the request that have not yet been released to Plaintiff.

50. Defendants' failure to timely respond to Plaintiff's request violates the FOIA, 5 U.S.C. § 552(a)(6)(A), and the corresponding agency regulations, 28 C.F.R. § 16.6(b).

51. Defendants' failure to make promptly available the records sought by Plaintiff's request violates the FOIA, 5 U.S.C. § 552(a)(3)(A), and the corresponding agency regulations, 28 C.F.R. § 16.6(b).

52. Defendants' improper withholding of information, including information redacted from the first interim release, violates the FOIA, 5 U.S.C. § 552(a)(4)(B).

53. Defendants' failure to make a reasonable effort to search for records responsive to the Request is a violation of the FOIA, 5 U.S.C. § 552(a)(3)(C). The "first interim release" does

not include any information from the Detroit Field Office, nor anything specific to Defendants' use of their authorities under the DIOG in Michigan.

54. Defendants' failure to grant Plaintiff's request for a public interest fee waiver violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and the corresponding agency regulations, 28 C.F.R. § 16.11(k)(1). Mr. Hardy's statement that a decision as to the fee waiver request "will be made once all responsive material has been received and reviewed" does not support an alternative conclusion. Receipt and review of the documents is not a factor in determining whether requests for a public interest fee waiver should be granted pursuant to 5 U.S.C. § 552(a)(4)(A)(ii).

55. Defendants' failure to grant Plaintiff's request for a limitation of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(ii), and the corresponding agency regulations, 28 C.F.R. § 16.11(d).

56. Defendants have forfeited any right to collect search or duplication fees by failing to timely respond to the Request. 5 U.S.C. § 552(a)(4)(A)(viii).

57. Defendants' response to Plaintiff's appeal of the first interim release is inadequate and violates the FOIA, 5 U.S.C. § 552(a)(6)(A).

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)     Order Defendants to conduct a thorough search for all responsive records;

(2)     Order Defendants to immediately process all requested records;

(3)     Order Defendants to promptly disclose the requested records in their entirety and to make copies available to Plaintiff;

(4)     Enjoin Defendants from withholding records responsive to the Request;

(5) Enjoin Defendants from charging Plaintiff fees for processing the Request;

(6) Enter a preliminary and permanent injunction against the Defendants ordering the relief requested herein;

(7) Award Plaintiff its reasonable attorneys' fees and other litigation costs incurred in this action; and

(6) Grant such other relief as the Court deems just and proper.

Respectfully submitted,

/s/Stephen C. Borgsdorf
Stephen C. Borgsdorf (P67669)
DYKEMA GOSSETT PLLC
Cooperating Attorneys, American Civil Liberties Fund of Michigan
2723 South State Street, Suite 400
Ann Arbor, MI 48104
(734) 214-7663
sborgsdorf@dykema.com

/s/Mark P. Fancher
Mark P. Fancher (P56223)
Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
American Civil Liberties Union Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6822
mfancher@aclumich.org
msteinberg@aclumich.org

/s/Nusrat Choudhury
Nusrat Choudhury (*Admission Pending*)
Hina Shamsi (*Admission Pending*)
National Security Project
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
 (212) 519-7876
nchoudhury@aclu.org
hshamsi@aclu.org

Attorneys for Plaintiff

July 20, 2011